UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE A. LAREAU, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>                    v.<br><br>ENDOCYTE, INC., JOHN C. APLIN, MIKE A. SHERMAN, PHILIP S. LOW, COLIN GODDARD, MARC KOZIN, PATRICK MACHADO, FRED A. MIDDLETON, LESLEY RUSSELL, and DAWN SVORONOS,<br><br>                              Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1.  **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>2.  **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

George A. Lareau ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      This is a class action brought by Plaintiff on behalf of himself and the other shareholders of Endocyte, Inc. ("Endocyte" or the "Company"), except Defendants (defined below) and their affiliates, against Endocyte and the members of Endocyte's board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Endocyte and Novartis AG ("Novartis").

1

2.      On October 17, 2018, the Board caused the Company to enter into an agreement of plan of merger (the "Merger Agreement") with the Novartis, pursuant to which, Endocyte shareholders will receive $24.00 in cash for each share of Endocyte stock they own (the "Merger Consideration").

3.      On, October 31, 2018, the Board authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act that recommends shareholders vote in favor of the Proposed Merger.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading. Specifically, the Proxy contains materially incomplete and misleading information concerning the valuation analyses performed by the Company's financial advisors, Centerview Partners LLC ("Centerview") and Jefferies LLC ("Jefferies" and together with Centerview, the "Financial Advisors"), in support of their fairness opinions.

5.      It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

6.      For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed

below is disclosed to Endocyte shareholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Endocyte's common stock trades on the Nasdaq stock exchange, which is headquartered in this District; Endocyte retained MacKenzie Partners, Inc., a proxy solicitation firm headquartered in this District, to communicate with shareholders; and Endocyte hired two financial advisors who are both headquartered in this District, rendering venue

in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of Endocyte common stock and held such stock since prior to the wrongs complained of herein.

11.     Defendant Endocyte is a Delaware corporation with its principal executive offices are located at 3000 Kent Avenue, Suite A1-100, West Lafayette, Indiana 47906.  The Company is biopharmaceutical company developing targeted therapies for the treatment of cancer. Endocyte's common stock trades on the Nasdaq under the symbol "ECYT."

12.     Individual Defendant John C. Aplin is director of Endocyte and Chairman of the Board.

13.     Individual Defendant Mike A. Sherman is a director of Endocyte and the President and Chief Executive Officer of the Company.

14.     Individual Defendant Philip S. Low is a director of Endocyte and the Chief Science Officer of the Company.

15.     Individual Defendant Colin Goddard is, and has been at all relevant times, Lead Director of Endocyte.

16.     Individual Defendant Marc Kozin is, and has been at all relevant times, a director of Endocyte.

17.     Individual Defendant Patrick Machado is, and has been at all relevant times, a director of Endocyte.

18.     Individual Defendant Fred A. Middleton is, and has been at all relevant times, a director of Endocyte.

19.    Individual Defendant Lesley Russell is, and has been at all relevant times, a director of Endocyte.

20.    Individual Defendant Dawn Svoronos is, and has been at all relevant times, a director of Endocyte.

21.    The parties identified in ¶¶ 11-20 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Endocyte common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

23.    This action is properly maintainable as a class action for the following reasons:

(a)    The Class is so numerous that joinder of all members is impracticable. As of the close of business on October 29, 2018, Endocyte had 82,088,638 shares of common stock outstanding held by hundreds to thousands of individuals and entities—the actual number of public shareholders will be ascertained through discovery;

(b)    The holders of these shares are believed to be geographically dispersed through the United States;

(c)    There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

i.    Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

ii.  Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.  Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated;

(d)  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

<strong><u>SUBSTANTIVE ALLEGATIONS</u></strong>

**I.      Background and the Proposed Merger**

24.  Endocyte, incorporated on December 11, 2001, is a biopharmaceutical company. The Company is engaged in developing therapies for the treatment of cancer and inflammatory diseases. Endocyte uses its technology to create small molecule drug conjugates (SMDCs) and companion imaging diagnostics. The Company's pipeline includes Folate-Tubulysin (EC1456), PSMA Tubulysin (EC1169), Vintafolide (Folate DAVLBH), Folate-DNA alkylator (EC1788), Folate-Aminopterin (EC1669), Folate-mTor inhibitor (EC0371), Etarfolatide (Folcepri or Tc99m), and PSMA- Tc99m (EC0652).

25.     Novartis is a holding company, which provides healthcare solutions. The Company is engaged in the research, development, manufacturing, and marketing of a range of healthcare products led by pharmaceuticals. The Company's segments include Innovative Medicines, Sandoz, Alcon, and Corporate activities. Innovative Medicines researches, develops, manufactures, distributes, and sells patented prescription medicines to develop health outcomes for patients and healthcare providers. Sandoz develops, manufactures, distributes, and sells prescription medicines, as well as pharmaceutical active substances that are not protected by valid and enforceable third-party patents. Alcon researches, develops, manufactures, distributes, and sells eye care products. Novartis' range of products includes pharmaceuticals and oncology medicines, generic and biosimilar medicines, and eye care devices.

26.     On October 18, 2018, Endocyte issued a press release to announce the Proposed Merger stating, in relevant part, as follows:

**Endocyte Enters Into Agreement to be Acquired by Novartis AG for $2.1 Billion**

**Novartis to acquire Endocyte for $24 per fully diluted share in cash**

**PSMA-617 to enhance Novartis' industry-leading radio-ligand therapy platform**

**WEST LAFAYETTE, Ind., October 18, 2018 (GLOBE NEWSWIRE)** — Endocyte, Inc. (Nasdaq:ECYT), a biopharmaceutical company developing targeted therapeutics for cancer treatment, today announced that it has entered into an agreement and plan of merger with Novartis AG ("Novartis") pursuant to which Novartis will acquire Endocyte for $24 per share, or a total equity value of approximately $2.1 billion, in cash. This offer represents a premium of 54% percent to Endocyte's closing price of $15.56 on October 17, 2018.  The transaction was unanimously approved by the board of directors of Endocyte.

"Since acquiring exclusive worldwide rights to develop and commercialize PSMA-617 agents in 2017, the entire Endocyte team, along with our partners, have worked tirelessly to build a leading radioligand (RLT) portfolio and create value for patients and shareholders alike. We are thrilled that Novartis recognizes the potential for 177Lu-PSMA-617 to change the treatment landscape for men with metastatic

castration-resistant prostate cancer (mCRPC), as well as the broader role that RLTs may potentially play in the treatment of cancer," said Mike Sherman, president and CEO of Endocyte. "The global reach and expertise of Novartis in developing and commercializing RLT therapies will be critical in efforts for patients to benefit from these therapies as quickly as possible."

Completion of the transaction is expected in the first half of 2019, subject to approval by Endocyte stockholders, antitrust and regulatory approvals and other customary closing conditions. Until that time, Endocyte will continue to operate as a separate and independent company.

Centerview Partners LLC is acting as lead financial advisor to Endocyte. Jefferies LLC is also acting as financial advisor to Endocyte.  Faegre Baker Daniels LLP is acting as legal counsel to Endocyte.

27.    The Merger Consideration is inadequate consideration for Endocyte shareholders. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

## II.    The Proxy Is Materially Incomplete and Misleading

28.    On October 31, 2018, Endocyte filed the Proxy with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to cast an informed vote regarding Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

29.    First, with respect to the *Discounted Cash Flow* ("DCF") Analyses prepared by the Financial Advisors, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying Centerview's calculation of the discount rate range of 13.0% to 15.0%, including the WACC components and company-specific CAPM inputs;

(ii) the inputs and assumptions underlying Jefferies' calculation of the discount rate range of 13.2% to 14.2%, including the WACC components and company-specific CAPM inputs; (iii) the net present value of tax savings from usage of net operating losses and future losses; (iv) the value of Endocyte's net cash balance; (v) the actual terminal values calculated for each DCF analysis; (vi) the rationale for selecting the perpetuity growth rates of (80%) and 0% to (10%); and (vii) the number of shares used to find the implied per share equity values.

30.      These key inputs are material to Endocyte shareholders, and their omission renders the summary of the *Discounted Cash Flow* Analyses incomplete and misleading. These missing inputs are especially important here given the different valuations found by each financial advisor utilizing the same set of unlevered free cash flows.  Indeed, the degree of difference in assumed growth rates for Endocyte is particularly alarming. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further

dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

31.     Without the above-omitted information Endocyte shareholders are misled as to the reasonableness or reliability of the Financial Advisors' analyses, and unable to properly assess the fairness of the Proposed Merger.  Accordingly, these material omissions render the summaries of the *Discounted Cash Flow* Analyses included in the Proxy misleading.

32.     Second, with respect to Jefferies' *Selected Public Companies Analysis* the Proxy fails to disclose the individual multiples for each company utilized in the analysis. A fair summary of a companies analysis requires the disclosure of the individual multiples for each company a financial advisor selects—as illustrated in the summary provided for Centerview's corresponding analysis. Merely providing the range of values that a banker applied—such as the summary on page 58 of the Proxy—is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down Endocyte's implied value. Accordingly, the omission of this material information renders the summary of Jefferies' Companies Analysis provided in the Proxy misleading.

33.     In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act**

34.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

36.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.    The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

38.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding the valuation analyses performed by the Financial Advisors.

39.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

40.    Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections for Endocyte and the details surrounding discussions with other interested parties and the Financial Advisors.  Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review the Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41.    Each of the Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The

12

Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of Endocyte's financial projections.

42. Endocyte is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Proxy.

43. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and will deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Merger. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Endocyte within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Endocyte, and participation in and/or awareness of the Endocyte's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or

indirectly, the decision making of Endocyte, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Endocyte, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

48. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

51.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.  Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.  Preliminarily and permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.  Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

15

DATED: November 8, 2018                Respectfully submitted,

*/s/ Juan E. Monteverde*
Juan E. Monteverde

**MONTEVERDE & ASSOCIATES PC**
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

16